UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MGR MEATS, INC., EDWARD FISCHER,
ROBERT RANERI and RICHARD RANERI,

        Plaintiffs,

        v.

PAUL SCHWEID,

        Defendant.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
10-CV-3068 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiffs Mgr Meats, Inc., Edward Fischer, Robert Raneri and Richard Raneri filed the above-captioned action against several defendants including Renaissance Provisions Corp., Dominic DiPalma and Paul Schweid. Plaintiffs subsequently amended the Complaint twice to, among other things, add Cimitile Provisions, Inc. and Antonio Piccolo as defendants. The only remaining defendant is Paul Schweid ("Defendant"). In the Second Amended Complaint (referred to hereafter as "Complaint"), Plaintiffs assert New York state law claims against Defendant for tortious interference with a contract and unjust enrichment. Defendant has moved to dismiss both claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, Plaintiffs have moved to amend the Complaint to add a breach of contract claim against Defendant. The Court heard argument on November 16, 2012. For the reasons set forth below, the motion to dismiss is denied. Plaintiffs' motion to amend the Complaint is granted.[1]

---

[1] In their briefs, all parties relied extensively on evidence obtained during discovery, including the deposition testimonies of various witnesses. At oral argument, the Court inquired as to whether the parties sought to convert the motion to a motion for summary judgment

**I.  Background**

The facts alleged in the Complaint are assumed to be true for the purposes of this motion. Plaintiff MGR Meats, Inc. ("MGR Meats") was a family owned wholesale distributor of meat, including products of Boar's Head Inc. ("Boar's Head").[2]  (Compl. ¶ 2.)  Plaintiffs Edward Fischer, Robert Raneri, and Richard Raneri were the principals of MGR Meats.  (*Id.*)  MGR Meats owned special Boar's Head refrigerated trucks and other assets, including equipment, inventory, fixtures, customer accounts and goodwill.  (*Id.*)

On March 22, 2002, Plaintiffs sold the Boar's Head part of their distributorship business to Renaissance Provisions Corp. ("Renaissance")[3] and Dominic DiPalma ("DiPalma") for $975,000.  (*Id.* at ¶ 5.)  DiPalma and Renaissance paid MGR Meats $425,000 in cash and signed a promissory note in the amount of $550,000, which was payable in 120 installments over 10 years at an eight percent interest rate.  (*Id.*; Pls.' Opp'n 3.)  The sale included refrigerated trucks and other assets, such as equipment, inventory, fixtures, customer accounts and goodwill. (Compl. at ¶ 5.)  These items were secured by "a security interest and Financing Statement (UCC-1) on all of the goods, equipment, inventory, fixtures, accounts receivables, accounts and commercial vehicles of the business, including after-acquired items."  (*Id.* at ¶ 25.)  In addition, DiPalma and Renaissance agreed to file a "Notice of Lien (MV-900) on the [two] commercial

---

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Defendant informed the Court that he seeks to proceed on his motion as a Rule 12(b)(6) motion to dismiss.

[2] Boar's Head produces meat and delicatessen products that are distributed to stores, through independent distributors.  (Pls.' Opp'n 2–4.)  Each distributor is given a route number and each has an exclusive customer list.  (*Id.*)

[3] Renaissance was also a distributor.  (Pls.' Opp'n 2.)

trucks and all after acquired vehicles" and "pay for a life insurance policy on [DiPalma's] life naming the plaintiffs" as sole beneficiaries. (*Id.* at 25–26.)

Plaintiffs allege that Defendant knew of the agreements between Plaintiffs, Renaissance and DiPalma and intentionally induced DiPalma and Renaissance to breach the agreements by advising them not to pay Plaintiffs and "by purchasing, transferring or otherwise brokering the transfer of all the customer accounts and assets subject to the Agreement," (*id.* at ¶ 34.), causing damage to Plaintiffs. (*Id.* at ¶ 35.) By March 2009, all of the customer accounts had been transferred to Defendant and others, and the assets that were to secure the loan from MGR Meats to Renaissance and DiPalma had been dissipated. (*Id.*) Defendant and others continue to use the assets that secured the loan, have profited from those assets, and have refused to pay Plaintiffs although Plaintiffs have demanded payment. (*Id.* at ¶¶ 37, 39.).

Defendant now moves to dismiss the Complaint in its entirety. Defendant argues that Plaintiffs failed to state a claim for tortious interference with a contract because Plaintiffs did not plead "but for causation." (Def. Mot. to Dismiss 6–7.) Defendant further argues that Plaintiffs failed to state a claim for unjust enrichment because (1) there is a contract that governs the subject matter at issue, thus, Plaintiffs' only remedy is pursuant to that contract, and (2) there was no privity between Defendant and Plaintiffs. (Def. Mot to Dismiss 10–12.) In their response to the motion, Plaintiffs seek to amend the Complaint to add a claim for third party beneficiary to a contract between Defendant, DiPalma, and Renaissance and to add Defendant's company as a defendant. (Pls.' Opp'n 5–7.) Defendant argues that Plaintiffs cannot sustain a third party beneficiary claim because there never was a contract between Defendant, his company, DiPalma and Renaissance. (Def. Reply 5.)

II. Discussion

   a. Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must, however, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).[4]

---

[4] Generally, a court may only consider materials encompassed in the "four corners" of the complaint when deciding a motion to dismiss. *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (holding that "a district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss" (citations omitted)). "For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citations omitted). Deposition testimony is not part of the four corners of the complaint. *See, e.g., Maloney v. County of Nassau*, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) (Depositions and other discover evidence are not part of the "four corners" of the complaint and are not properly considered on a motion to dismiss); *see also Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (finding that "extrinsic material such as depositions or affidavits" can be considered if the court converts the motion to a summary judgment motion).

### b. Tortious Interference Claim

Plaintiffs have alleged sufficient facts to state a claim against Defendant for tortious interference with a contract. "Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (citations omitted); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing the same test). "[T]o be actionable, the interference must be intentional and not incidental to some other lawful purpose." *Dell's Maraschino Cherries Co., Inc. v. Shoreline Fruit Growers, Inc.*, No. 10-CV-3789, 2012 WL 3537009, at *18 (E.D.N.Y. Aug. 14, 2012) (quoting *Heath–Chem Corp. v. Baker,* 915 F.2d 805, 809 (2d Cir. 1990)). "Plaintiff must also allege that the breach would not have occurred 'but for' the conduct of the defendants." *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 297 (E.D.N.Y. 2012) (citing *Sharma v. Skaarup Ship Mgmt. Corp.,* 916 F.2d 820, 828 (2d Cir. 1990)).

Accepting the allegations in the Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, as the Court is required to do, the Court finds that Plaintiffs have stated a claim for tortious interference with a contract. Plaintiffs allege that: (1) there was a contract, i.e., the promissory note between Plaintiffs and Renaissance and DiPalma (Compl. ¶ 34); (2) Defendant had knowledge of the contract (*id.*); (3) Defendant "intentionally and without cause or justification" induced DiPalma and Renaissance to breach the contract between Plaintiffs and Renaissance and DiPalma by advising them not to pay Plaintiffs and "by purchasing, transferring or otherwise brokering the transfer of all the customer accounts and

5

assets subject to the Agreement" (*id.*); and (4) Plaintiffs were damaged as a result of Defendant's action. (*Id.* at ¶ 35.)

Defendant argues that Plaintiffs have failed to plead "but for causation." However, the fact that Plaintiffs have pled that Defendant intentionally induced the breach of the contract is sufficient to satisfy the "but for causation" pleading requirement. *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 729 (S.D.N.Y. 2012) (pleading "intentional inducement" meets the "but for causation" requirement at the motion to dismiss stage); *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 173 (E.D.N.Y. 2010) (same); *see also Planet Payment, Inc. v. Nova Info. Sys., Inc.*, No. 07-CV-2520, 2011 WL 1636921, at *10 (E.D.N.Y. Mar. 31, 2011) ("The procurement portion of a claim of tortious interference with contract requires that 'but for' the conduct of the defendant, there would not have been a breach" which requires the plaintiff to plead that the defendant "'induc[ed] or otherwise caus[ed]' the third-party not to perform the contract" (alteration in the original) (quoting *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007)). "The inducement causing the breach 'may be any conduct conveying to the third person the actor's desire to influence him not to deal with the other . . . [I]t may be the promise of a benefit to the third person if he will refrain from dealing with the other." *St. John's Univ.*, 757 F. Supp. 2d at 173 (alteration in original) (quoting Restatement (Second) of Torts § 766).

It is not necessary that a plaintiff use the term "but for" as long as the complaint sufficiently alleges that the defendant was the cause of the breach. *See, e.g., Omni Food Sales v. Boan*, No. 06-CV-119, 2007 WL 2435163, at *8 (S.D.N.Y. Aug. 24, 2007) ("[The] [d]efendants argue that [the plaintiff] has not alleged this required but-for causation element; but [the plaintiff] has alleged: '*as a result of the conspiracy* Cargill rejected [the plaintiff] as its actual and

potential broker.' At this stage, this allegation is sufficient. [The plaintiff] is certainly not required to prove and establish but-for causation in the Complaint in order to survive a Rule 12(b)(6) motion." (emphasis in original)); *Four Finger Art Factory, Inc. v. Dinicola*, No. 99-CV-1259, 2001 WL 21248, at *6 (S.D.N.Y. Jan. 9, 2001) (holding that the plaintiff's factual "allegations are sufficient to establish 'but for' causation" because there were enough allegations from which "but for" causation could be inferred); *Antonios A. Alevizopoulos & Asscs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000) (holding that "at the pleading [stage], each allegation is presumed to be true and every *inference* is made in plaintiffs' favor" and there was enough in the complaint from which the court could infer that defendant was the "but for" cause of the breach); *Madison Third Bldg. Co., LLC v. Berkey*, 817 N.Y.S.2d 228, 228–29 (App. Div. 2006) ("[g]iving [the pleadings] the benefit of every favorable inference, plaintiff" provided sufficient facts for the court to infer that the defendant had been the cause of the breach).

Plaintiffs allege that Defendant "induc[ed]" DiPalma and Renaissance by "advising them not to pay [P]laintiffs and by purchasing, transferring or otherwise brokering the transfer of all the customer accounts and assets subject to the Agreement[.]" (Compl. ¶ 34.) Drawing all reasonable inferences in favor of Plaintiffs, the Complaint has alleged that but for Defendant's interference, DiPalma and Renaissance would not have breached their agreement with Plaintiffs. *See, e.g., ARB Upstate Commc'ns LLC v. R.J. Reuter, L.L.C.*, 940 N.Y.S.2d 679, 685 (App. Div. 2012) ("The complaint alleges that defendants advised plaintiffs to terminate their agreement with Bastarache, allowing defendants to purchase the sites and causing plaintiffs to lose their purchase options. This was sufficient to state [a] cause of action [for tortious interference with

7

contract]."). Plaintiffs have sufficiently pled tortious interference under the Rule 12(b)(6) standard. Defendant's motion to dismiss this claim is denied.

Even if the Court were to treat the motion as a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure and consider deposition testimonies and other discovery evidence presented by Plaintiffs and Defendant, the Court would, nevertheless, deny the motion because there are material issues of fact that must be determined by a jury. Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012); *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

In support of his motion to dismiss, Defendant argues that the evidence obtained during discovery does not support Plaintiffs' claim that Defendant did anything to interfere with the

promissory note owed to Plaintiffs.[5] (Def. Mot. to Dismiss 6–7.) Defendant cites to the deposition testimony of Plaintiff Richard Raneri. (*Id.*) Raneri testified that Defendant told Plaintiffs that "he was going to handle all of Mr. DiPalma's debts. He was buying him out," but also stated that he did not recall that Defendant ever told him that he advised DiPalma not to pay Plaintiffs. (*Id.*) In response, Plaintiffs cite to the deposition transcript of DiPalma who testified that Defendant agreed to purchase his route for $305,000 and agreed to, among other things, pay Plaintiffs the money owed on the loan and the money owed to Boar's Head. (Pls.' Opp'n 3–4.) Plaintiffs also cited to Defendant's deposition testimony in which Defendant admitted that DiPalma agreed to sell him his route, he admitted that he paid DiPalma's debt of $45,000 owed to Boar's Head, and he admitted that he paid DiPalma approximately $65,000. (Pls.' Opp'n 4.) Plaintiffs further cited to the deposition testimony of Plaintiff Richard Raneri who testified that he spoke to Defendant, that Defendant agreed to pay DiPalma's loan owed to Plaintiffs but that Defendant tried to negotiate the loan amount offering first $60,000 and later $75,000. (Pls.' Opp'n 4.) Clearly there are genuine disputes as to several material facts that would preclude this Court from granting summary judgment to Defendant on the tortious interference claim.

### c. Unjust Enrichment Claim

Plaintiffs have also sufficiently pled an unjust enrichment claim against Defendant. "To prevail on a claim for unjust enrichment [under] New York [law], a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of*

---

[5] According to Defendant, Boar's Head took the route away from DiPalma and Renaissance for failure to pay their debts and gave it to Defendant. (Def. Mot. to Dismiss 6–7; Reply 5.) Defendant never told or promised DiPalma and Renaissance anything in exchange for the route. (Def. Mot. to Dismiss 6–7; Reply 5.)

*New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *see also Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (outlining the unjust enrichment test). "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered[.]" *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215–16 (2007) (alteration omitted) (quoting *Paramount Film Distrib. Corp. v. State of New York,* 30 N.Y.2d 415, 421(1972)). "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement. . . .* The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Beth Israel Med. Ctr.*, 448 F.3d at 586–87 (emphasis in original) (citations and internal quotation marks omitted). However, if there is no valid contract that pertains to the disputed issues, a plaintiff may proceed under an unjust enrichment theory. *Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*, No. 10-CV-232, 2010 WL 4449366, at *4 (S.D.N.Y. Oct. 13, 2010) ("[A] plaintiff may proceed on a theory of unjust enrichment despite the existence of a valid contract where 'the contract does not cover the dispute in issue.'" (quoting *Mid–Hudson Catskill Migrant Ministry, Inc. v. Fine Hosp. Corp.,* 418 F.3d 168, 175 (2d Cir. 2005))); *see also Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11-CV-5832, 2012 WL 3542196, at *10–11 (S.D.N.Y. Aug. 15, 2012) ("[A] claim of unjust enrichment cannot be sustained if a valid contract governs the relevant subject matter, even against a non-signatory to the contract . . . [however,] [i]f the contract does not cover the dispute in issue, a plaintiff may proceed on a theory of quantum meruit as well as contract.").

In the Complaint, Plaintiffs allege that: their loan to DiPalma and Renaissance was secured by assets in which they had a security interest; the assets were transferred to Defendant;

and Defendant has used and profited from those assets. (Compl. ¶¶ 5–8; 36–41.) Thus, accepting Plaintiffs' allegations as true, Plaintiffs have established that Defendant benefitted at their expense. Drawing all reasonable inferences in favor of Plaintiffs, if Defendant did profit and is continuing to profit from the use of the assets that secured the loan owed to Plaintiffs,[6] equity and good conscience requires that Plaintiffs be reimbursed for the use of those assets. *See Bank Midwest.*, 2010 WL 4449366, at *4 (holding that unjust enrichment claims can be granted where the defendant was enriched at the expense of plaintiff and "the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff" (quoting *Golden Pac. Bankcorp v. F.D.I.C.,* 273 F.3d 509, 519 (2d Cir. 2001))); *Sperry*, 8 N.Y.3d at 215–16 ("It is well settled that 'the essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" (citations and alterations omitted)); *State v. Int'l Asset Recovery Corp.*, 866 N.Y.S.2d 823, 826 (App. Div. 2008) ("[P]rinciples of unjust enrichment [are] governed by 'broad considerations of right, justice and morality' . . . [; the fact] that defendant 'received or is holding sums of money to which plaintiff is entitled'" is sufficient to establish an unjust enrichment claim. (alterations and citations omitted)).

Defendant argues that there cannot be an unjust enrichment claim against him because (1) there was a valid contract (the contract between Plaintiffs, DiPalma and Renaissance, i.e. the promissory note) governing the subject of the dispute which precludes Plaintiffs' ability to recover under unjust enrichment, and (2) he was not in privity with Plaintiffs. (Def. Mot. to

---

[6] Having a security interest is a sufficient property interest to be the basis of an unjust enrichment claim. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 263 (1999) ("[A] security interest in the property, . . . can [be] use[d] [by plaintiff] [in] a claim for unjust enrichment." (internal citation marks and citations omitted)).

Dismiss 10–12.) Plaintiffs argue that either Plaintiffs have a claim for unjust enrichment for the transfer of DiPalma and Renaissance's route to Defendant or a contract claim for breach of contract, as a third party beneficiary, for a contract between Defendant, Defendant's company, DiPalma and Renaissance. (Pls.' Opp'n 5–6.) Plaintiffs further argue that there is evidence that an oral contract existed between Defendant, Defendant's company, DiPalma and Renaissance.[7] (*Id.*)

Defendant is correct that when a valid contract exists that covers the subject of the dispute, even if the defendant was not a party to the contract, a plaintiff is precluded from brining a claim for unjust enrichment, because the focus of the inquiry is not on the parties to the contract but the subject of the contract. *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) ("[A] quasi-contractual claim against a third party must be dismissed when an undisputedly valid and enforceable written contract governs the same subject matter."); *Randall's Island Aquatic Leisure, LLC v. City of New York*, 938 N.Y.S.2d 62, 63 (App. Div. 2012) ("[T]here can be no quasi-contract claim against a third-party non-signatory to a contract *that covers the subject matter of the claim*." (emphasis added)). "Only where the contract does not cover the dispute in issue may a plaintiff proceed upon a quasi-contract theory of unjust enrichment." *Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 948 N.Y.S.2d 292, 299 (App. Div. 2012)). Thus, the question is whether the promissory note covers all relevant subject matter at issue in the litigation.

In his papers in support of the motion to dismiss and at oral argument, Defendant relied on *Viable Marketing Corporation v. Intermark Communications*, No. 09-CV-1500, 2011 WL

---

[7] The contract claim and Plaintiffs' motion to amend the Complaint to add said claim is discussed at length in the following section.

3841417, at *3 (E.D.N.Y. Aug. 26, 2011), for the proposition that since there was a contract between Plaintiffs and DiPalma and Renaissance, Plaintiffs are precluded from bringing an unjust enrichment claim. (*See* Def. Mot. to Dismiss 10–11.) However, *Viable Marketing* is distinguishable from the case before the Court.

In *Viable Marketing*, there were two sets of contracts, one between the plaintiff and the PartnerWeekly defendant, which gave the PartnerWeekly defendant exclusive rights to market some of the plaintiff's products online, and one between the PartnerWeekly defendant and the Intermark defendant, in which the Intermark defendant agreed to use its services to help the PartnerWeekly defendant drive internet traffic to the plaintiff's website. 2011 WL 3841417, at *1. The dispute arose out of the tactics used by the Intermark defendant and the PartnerWeekly defendant to drive traffic to the plaintiff's website and the alleged fraudulent collection of commission from the plaintiff. *Id.* The court found that "there [were] two express agreements governing the subject matter of the dispute: (1) the Viable [the plaintiff]–PartnerWeekly Contract, and (2) the PartnerWeekly–Intermark Contract." *Id.* at *3. Despite the fact that the plaintiff was not a party to the PartnerWeekly–Intermark Contract and the Intermark defendant was not a party to the Viable–PartnerWeekly Contract, the plaintiff could still adequately recover under contract law. *Id.* The plaintiff did "not dispute the existence or validity of either contract, and, in fact, [brought] two claims arising out of those contracts: (1) a claim as a third-party beneficiary for the breach of the PartnerWeekly–Intermark Contract; and (2) a claim for tortious interference with the Viable–PartnerWeekly Contract." *Id.* Therefore, the plaintiff had two contract claims that adequately covered the subject matter of the dispute, and the plaintiff was precluded from bringing an unjust enrichment claim. *Id.*

Like *Viable Marketing*, there are two transactions at issue here: (1) the sale from Plaintiffs to DiPalma and Renaissance and (2) the transfer from DiPalma and Renaissance to Defendant. However, unlike *Viable Marketing*, Defendant contends that only one viable contract existed, which governed only one of the transfers – the contract between Plaintiffs, DiPalma and Renaissance. (Def. Reply 4–5.) According to Defendant, there was no contract – oral or written – between Defendant, DiPalma and Renaissance for the transfer from DiPalma and Renaissance to Defendant.[8] (*Id.*) Thus, Plaintiffs would be precluded from making a third party beneficiary claim afforded the plaintiff in *Viable Marketing* and Defendant could be unjustly enriched for the receipt and use of Plaintiffs' property without proper compensation. As the Complaint makes abundantly clear, one of the key subject matters of the dispute is how Defendant came into possession of the property in which Plaintiffs had an interest and held legitimate liens against, without proper compensation to Plaintiffs. (*See* Compl. ¶¶ 7, 36–41.)

Because there is a question as to whether a valid contract existed covering the transfer from DiPalma and Renaissance to Defendant, the subject matter at issue, Plaintiffs can pursue a claim for unjust enrichment for this transfer. *See, e.g., Forman v. Guardian Life Ins. Co. of Am.*, 908 N.Y.S.2d 27, 31 (App. Div. 2010) ("Plaintiffs are entitled to proceed in the alternative upon quasi-contractual theories because there is a question whether" a valid contract existed.); *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 867 N.Y.S.2d 169, 180 (App. Div. 2008) ("Where . . . there is a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quasi-contract as well as breach of contract and will not be required to elect his or her remedies." (citations omitted)); *Foster v.*

---

[8] As discussed in the following section, at least some evidence produced during discovery suggests that there may have been a valid contract between Defendant, Defendant's company, DiPalma and Renaissance.

14

*Kovner*, 840 N.Y.S.2d 328, 333 (App. Div. 2007) ("[U]njust enrichment claim should be sustained as an alternative basis for relief in the event it is determined that there was no oral agreement."); *Moors v. Hall*, 532 N.Y.S.2d 412, 414 (App. Div. 1988) (holding that where a contract was unenforceable under the statute of frauds, the plaintiff could still proceed under unjust enrichment).

Defendant's assertion that he does not have privity with the Plaintiffs and therefore cannot be liable for unjust enrichment is without merit. The New York courts have stated that privity is not required in order to claim unjust enrichment. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) ("[P]rivity is not required for an unjust enrichment claim[.]"); *Georgia Malone & Co. v. Rieder*, 926 N.Y.S.2d 494, 497 (App. Div. 2011), *aff'd sub nom.*, 19 N.Y.3d 511, 973 (2012) (same). The only requirement is that "there is a connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part." *Georgia Malone*, 926 N.Y.S.2d at 497. While Plaintiffs did not have a relationship with Defendant, Plaintiffs can sue under an equitable subrogation theory. "Where property of one person is used in discharging an obligation owed by another under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee." *In re Chateaugay Corp.*, 89 F.3d 942, 947 (2d Cir. 1996) (citations and alterations omitted); *see also Cashel v. Cashel*, 941 N.Y.S.2d 236, 239–40 (App. Div. 2012) (citing the same standard for equitable subrogation); *NYP Holdings, Inc. v. McClier Corp.*, 881 N.Y.S.2d 407, 410–11 (App. Div. 2009) (same). Equitable subrogation may apply even if Defendant was unaware of Plaintiffs' pre-existing lien. *See, e.g., ABN AMRO Mortg. Group, Inc. v. Pantoja*, 936 N.Y.S.2d 163, 164 (App. Div. 2012) (holding that equitable subrogation applies to mortgage on real property despite the fact that the owners

were unaware of the pre-existing mortgage); *see also NYP Holdings*, 881 N.Y.S.2d at 410–11 ("Regardless of whether [plaintiff] is the actual party in interest, permitting appellants to escape liability if they are responsible for some of the damages, would be the unjust enrichment that the principle of equitable subrogation seeks to avoid." (citations omitted)). Under the equitable subrogation doctrine, Plaintiffs may sustain an unjust enrichment claim against Defendants, despite the lack of privity between the parties. Defendant's motion to dismiss the unjust enrichment claim is denied.

### d. Breach of Contract

Plaintiffs seek leave to amend the Complaint, in light of new evidence learned during discovery that DiPalma, Renaissance, Defendant and TMC Provisions Inc. ("TMC"),[9] had an oral contract. (Pls.' Opp'n 5–7.) Plaintiffs would like to bring a claim as a third party beneficiary to the oral contract between Defendant, TMC, DiPalma and Renaissance. (*Id*.) In addition to adding a claim, Plaintiffs would like to add TMC as a defendant. (*Id.*) "Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a pleading 'shall be freely given when justice so requires.'" *Steger v. Delta Airlines, Inc*., 382 F. Supp. 2d 382, 387 (E.D.N.Y. 2005). "Amendments are generally favored because 'they tend to facilitate a proper decision on the merits.' . . . [I]t is ultimately 'within the sound discretion of the court whether to grant leave to amend.'" *MHANY Mgmt. Inc. v. County of Nassau*, No. 05–CV–2301, 2012 WL 523521, at *48–49 (E.D.N.Y. 2012). A court may deny a motion to amend a complaint because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Straker v. Metro. Transit Auth*., 333

---

[9] TMC is Defendant's company. (Pls. Opp'n 5–7.)

16

F. Supp. 2d 91, 102–03 (E.D.N.Y. 2004) (citations omitted). However, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.,* if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

To assert a third party beneficiary claim, Plaintiffs "must demonstrate '(1) the existence of a valid and binding contract between other parties, (2) that the contract was specifically intended for his individual benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 84 (S.D.N.Y. 2012) (quoting *Mayo v. County of Albany*, 357 F. App'x. 339, 343 (2d Cir. 2009)). "It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed." *Thompson*, 855 F. Supp. 2d at 84 (quoting *Madeira v. Affordable Hous. Found.*, 469 F.3d 219, 251 (2d Cir. 2006)). DiPalma gave sworn deposition testimony that an oral contract existed between DiPalma, Renaissance, Defendant and TMC. (Pls.' Opp'n 5–7.) As part of the contract terms, Defendant and TMC promised to pay Plaintiffs the outstanding balance owed by DiPalma to Plaintiffs for the purchase of the route. (*Id.*) Assuming arguendo, there was a valid contract between Defendant, TMC, DiPalma and Renaissance, Plaintiffs meet the third party beneficiary test.

In opposition to the motion to amend the Complaint, Defendant essentially argues that amendment would be futile. Defendant states that no oral contract could exist under the statute of frauds since the contract is for more than $500 of goods, and there is no evidence of a written

17

agreement. (Def. Reply 5.) Under the statute of frauds, "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 382 (S.D.N.Y. 2005); *see also Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 782 (2d Cir. 2003) (statute of frauds applies to the "sale of goods for $500 or more").

However, the statute of frauds in inapplicable "with respect to goods for which payment has been made and accepted or which have been received and accepted." N.Y. U.C.C. Law § 2-201(2)(c); *see also* N.Y. U.C.C. Law § 2-20(6) (defining what constitutes acceptance); *Pae v. Chul Yoon*, 838 N.Y.S.2d 172, 174 (App. Div. 2007) (Where defendant "accepted and received the subject goods from the plaintiff . . . the agreement was not unenforceable under the statute of frauds."); *Tip Top Farms, Inc. v. Dairylea Co-op., Inc*., 497 N.Y.S.2d 99, 108 (App. Div. 1985) *aff'd*, 69 N.Y.2d 625, 503 N.E.2d 692 (1986) (holding that the Statute of Frauds was "inapplicable because the [goods] had already been delivered, accepted and paid for pursuant to the parties' oral agreements"). Plaintiffs allege that Defendant, TMC, DiPalma and Renaissance orally contracted for the transfer of the route from DiPalma and Renaissance to Defendant and TMC, and it is undisputed that Defendant and TMC were given possession of the route and paid Boar's Head and DiPalma some money for the route (Schweid Decl. ¶¶ 6–8.); therefore, the statute of frauds is inapplicable and adding the third party beneficiary claim would not be futile. As the Court finds no other factors mitigating against amendment, Plaintiffs' request to amend the Complaint is granted.

### III. Conclusion

For the foregoing reasons, the Court finds that Plaintiffs have sufficiently stated claims for tortious interference with a contract and unjust enrichment, and Defendant's motion to dismiss the claims is denied. The Court also grants Plaintiffs' motion to amend the Complaint to add TMC Provisions, Inc. as a defendant and to add a cause of action for breach of contract against Defendant and TMC Provisions, Inc.

SO ORDERED:

/s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: December 21, 2012
Brooklyn, New York